UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:19-CV-00012-LLK

**RENEE FIELDS**                                                                                **PLAINTIFF**

**v.**

**ANDREW SAUL, Commissioner of Social Security**                     **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claim for Social Security disability benefits. The fact and law summaries of Plaintiff and Defendant are at Dockets # 11 and 17. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. (Docket # 9.)

The Administrative Law Judge's (ALJ's) finding that Plaintiff retains the ability to perform unskilled, light work is not supported by substantial evidence. Therefore, the Court will REMAND this matter to the Commissioner for a new decision.

**The ALJ found that Plaintiff can perform unskilled, light work.**

Plaintiff's treating physicians, David Smith and John Cecil, diagnosed Plaintiff as suffering (among other things) from severe, uncontrolled, type 2 diabetes mellitus (for which Plaintiff takes insulin) and associated diabetic peripheral neuropathy. (AR at 485, 488.) Peripheral neuropathy is a "functional disturbance or pathological change in the peripheral nervous system, sometimes limited to noninflammatory lesions as opposed to those of neuritis; … [k]nown etiologies include complications of other diseases (such as diabetes …), or of toxicity states (such as poisoning with arsenic [or] lead)." *Killian v. Comm'r of Soc. Sec.*, No. 11-5129, 2012 WL 2190738, at *2 (W.D. Ark. June 14, 2012). Symptoms of peripheral neuropathy include "burning, numbness, tingling, and pain" in the upper and lower extremities. *Id.* Plaintiff testified she experiences "burning, pain, feeling of needles, numbness" "in my

1

legs and my feet and in my hands." (Administrative Record (AR) at 47.) She experiences these symptoms "pretty much whenever [her] blood sugar is real high, so most all the time." (AR at 52.)

Due to her diabetic peripheral neuropathy (as well as abdominal pain from prior colon resection), Drs. Smith and Cecil limited Plaintiff (among other things) to no more than 3 hours of standing/walking per 8-hour workday. (AR at 485, 488.) Additionally, Dr. Cecil limited Plaintiff to occasional reaching and handling (i.e. seizing, grasping, turning, or otherwise working primarily with the whole hand). (AR at 485.)

At the administrative hearing, the ALJ acknowledged that Plaintiff would "grid out" if restricted to sedentary work.[1] (AR at 69.) In her written decision, the ALJ found that Plaintiff is not disabled because she retains the ability to perform a significant number of unskilled, light jobs in the national economy, such as bottling line inspector, laundry folder, and small products assembler. (AR at 14-15, 18.)

Light work requires a good ability to stand/walk and good use of the upper extremities. Specifically, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday, with sitting occurring intermittently during the remaining time. Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *5-6. The ALJ found that Plaintiff can stand/walk for 6 hours per 8-hour workday. (AR at 14-15.) Additionally, unskilled, light jobs generally require gross use of the arms and hands to grasp, hold, and turn objects (but do not require fine use of the fingers, which is associated with sedentary work). *Id.* at *6; SSR 83-14, 1983 WL 31254, at *4. Therefore, if accepted, the findings of Drs. Smith and Cecil would preclude performance of unskilled, light work.

The ALJ gave "little weight" to the findings of Drs. Smith and Cecil. (AR at 17 referencing AR at 485, 488.) The ALJ purported to give "great weight" to the findings of one-time examining consultant

---

[1] In her written decision, the ALJ cited Rule 202.10 of Appendix 2 of the regulations (the so-called medical-vocational guidelines, or grids) as a framework for decisionmaking. (AR at 18.) Grid Rules 202.10 and 201.09 contemplate the same individual (in terms of age, education, and previous work experience) except that that Rule 202.10 contemplates a maximum sustained work capability limited to light (as opposed to sedentary) work. Rule 202.10 directs an ultimate finding of "not disabled," and Rule 201.09 directs a finding of "disabled."

2

William James Tidwell, M.D., which (according to the ALJ) do "not appear entirely inconsistent with light exertional activity." (*Id.* referencing AR at 410-14.) The ALJ gave "little weight" to the findings of the Commissioner's non-examining program physician, Jack Reed. (*Id.* referencing AR at 100-02.)

**The ALJ did not identify substantial reasons  
for declining to give controlling weight to the opinions of Plaintiff's treating physicians.**

Plaintiff argues that the ALJ's finding that she can perform unskilled, light work is unsupported by substantial evidence for three reasons. First, the ALJ did not identify substantial reasons for declining to give controlling weight to the opinions of her treating physicians, Drs. Smith and Cecil.

The nature of the treatment relationship requires that opinions from treating physicians be given special consideration. *See* 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). Giving special consideration to the treating source opinions is particularly appropriate in this case due to Plaintiff's well-established treatment history with two treating sources:

> … Dr. Cecil began treating [Plaintiff] in 2013 and continued to do so until at least 2017. [AR] 377-408, 657-727. Dr. Smith began treating the Plaintiff in 2015 on a referral from Dr. Cecil and saw her at least through the end of 2017. [AR] 565-574, 780-827. Both physicians had treated [Plaintiff] for several years before rendering their opinions. Both physicians saw [Plaintiff] approximately every 3-4 months and sometimes more often.

(Docket # 11 at 9.)

The treating sources agree that Plaintiff suffers from poorly-controlled blood sugar (and associated diabetic peripheral neuropathy):

> … [Plaintiff] was hospitalized at Western Baptist Hospital from September 23, to September 27, 2015 for acute sigmoid diverticulitis and diabetes mellitus uncontrolled with an A1C of 10.5.[2] [AR]

---

[2] The hemoglobin A1C test demonstrates whether the blood sugar level has been controlled over the previous few weeks. *Vargas v. Comm'r*, No. EDCV-16-01027-KES, 2017 WL 968999, at *7 (C.D. Cal. Mar. 13, 2017) (citing The

3

515. She was hospitalized again in December 2015 for three days with the same condition. [AR] 492. … She was hospitalized from July 7, 2016 to July 11, 2016, for acute sigmoid diverticulitis and diabetes mellitus uncontrolled with an A1C of 10. [AR] 596. … [T]hree months before the [February 2018 administrative] hearing she saw Dr. Smith for her diabetes and her A1C at that time was 13.2. … [AR] 53, 786.

(*Id.* at 2, 4.)

A treating physician's medical opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 416.927(c)(2).

The ALJ found that "little weight, as opposed to controlling weight, can be granted to [the] opinions [of Drs. Smith and Cecil] because they are not reasonably supported by or consistent with other substantial evidence of record, including their own objective findings, which were previously referenced herein." (AR at 17.) The ALJ noted that Drs. Smith and Cecil found that Plaintiff's "musculoskeletal and neurological systems were characterized as normal," physical examination showed "normal motor strength and normal movement of all extremities," Plaintiff had "normal gait," she had not been "prescribed the use of an assistive ambulation device," and she was able to "sit and stand without difficulty." (AR at 16 referencing AR at 682, 693, 784, 806.) Additionally, according to the ALJ, Drs. Smith and Cecil "appear to have submitted opinions premised more on [Plaintiff's] subjective complaints." (AR at 17.)

In opining functional limitations due to diabetic peripheral neuropathy affecting Plaintiff's upper and lower extremities, the treating physicians were not merely accepting Plaintiff's subjective complaints. Nor, as Plaintiff illustrates by way of a series of rhetorical questions, were the gross physical observations of the treating physicians (which the ALJ relied upon, cited above) inconsistent with the presence of neuropathy symptoms:

---

Merck Manual of Medical Information, at 722-23 (Home ed. 1997)). The normal level for glycosylated hemoglobin is less than 7 percent. *Id.* Diabetics rarely achieve such levels, but tight control aims to come close to it. *Id.* Levels above 9 percent show poor control, and levels about 12 percent show very poor control. *Id.*

> Would generalized peripheral diabetic neuropathy necessarily result is a loss of motor strength and movement of an affected extremity? Or would generalized peripheral diabetic neuropathy cause pain, burning and tingling in the affected extremity which becomes worse with extended standing, walking and sitting? … Would not her diabetic neuropathy have some impact on her ability to use her hands[?]

(Docket # 11 at 8, 11.) Therefore, the ALJ did not identify substantial reasons for declining to give controlling weight to the opinions of the treating physicians.

**The ALJ did not give good reasons for the weight given to the opinions of the treating physicians.**

Second, Plaintiff argues that, even if the treating physician opinions were not entitled to controlling weight, they were not entitled to only "little weight." (AR at 17.) The ALJ did not give good reasons for the weight given to those opinions.

20 C.F.R. § 416.927(c)(2) provides, in pertinent part:

> When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.

Section 416.927(c)(2). The relevant factors are: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. Section 416.927(c)(2)-(6).

The "good reasons" giving requirement is not a mere formality because, in addition to facilitating meaningful review, it "exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004). The ALJ's bare assertion that the opinions of the treating physicians were "not reasonably supported by or consistent

with … their own objective findings" and appeared to be based on Plaintiff's "subjective complaints" (AR at 17) fell short of the requirement of giving "good reasons."

**The ALJ erred in finding that Plaintiff can perform unskilled, light work in the absence of a supporting medical opinion.**

Plaintiff's third and final argument is that, in finding that she can perform unskilled, light work, the ALJ effectively rejected **every** medical opinion regarding what she can still do despite her impairments and "impermissibly place[d] placed himself in the role of medical expert." (Docket # 11 at 8.) As indicated above, the ALJ gave "little weight" to the findings of Drs. Smith, Cecil, and Reed and purported to give "great weight" to the findings of one-time examining consultant, Dr. Tidwell, which (according to the ALJ) do "not appear entirely inconsistent with light exertional activity." (AR at 17 referencing AR at 410-14.)

In fact, Dr. Tidwell found that Plaintiff can "stand without pain or discomfort for 30 to 60 minutes" and can "walk without pain, discomfort, shortness of breath, dizziness for up [to] the [length of a] football field." (AR at 411.) These findings are at odds with the ALJ's finding that Plaintiff can stand/walk 6 hours per 8-hour workday. (AR at 14-15.) Additionally, Dr. Tidwell found that Plaintiff can "use a pen to sign her name, hold a cup of coffee, zipper pants, but [not button] the shirt [and] should not have trouble holding a gallon [of] milk or a bag of groceries." (AR at 411.) These finding are at odds with the requirement of unskilled, light work of being able to use one's arms and hands to grasp, hold, and turn objects. Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *6. Therefore, Plaintiff persuasively argues that the ALJ effectively rejected every relevant medical opinion regarding what she can still do despite her impairments.

The remaining question is whether, in finding that Plaintiff can perform unskilled, light work based solely on non-medical factors, the ALJ impermissibly placed himself in the role of medical expert. There is no "brightline rule that medical opinions must [always] be the building blocks of the [ALJ's] RFC [residual functional capacity finding]." *Sadler v. Comm'r*, No. 18-11689, 2019 WL 4892419, at *6 (E.D. Mich. Aug. 16, 2019). Depending on the facts of a case, an ALJ's determination of a claimant's RFC in the absence of

a supporting medical opinion may reflect that he improperly "played doctor" and succumbed to the "temptation to substitute [his] own interpretation of medical records for that of a physician who has examined the records." *Id.* (quoting *Brown v. Comm'r*, 602 F. App'x 328, 331 (6th Cir. 2015)). In other cases, it may be appropriate for an ALJ to fashion his RFC based on non-medical factors notwithstanding the fact that no "physician offer[ed] an opinion consistent with that of the ALJ." *Id.* (quoting *Mokbel-Aljahmi v. Comm'r*, 732 F. App'x 395, 401 (6th Cir. 2018)).

*Sadler* reconciled these extremes by applying a two-part test. If 1) the ALJ did not properly discount the medical opinions and 2) there was no other basis for her RFC finding, the ALJ acted improperly. *Id.* In other words, "[i]f the ALJ has properly discounted the opinion evidence, the question becomes whether there was another basis for assigning the [RFC]." *Id.*

This opinion has already concluded that the ALJ erred in not providing "good reasons" for giving "little weight" to the opinions of the treating physicians. Therefore, the ALJ erred in discounting those opinion unless there was another basis for the ALJ's assignment of Plaintiff's RFC.

In support of his RFC finding, the ALJ noted that Plaintiff's impairments have not "entirely prevented [her] from engaging in all of the normal routine activities of life," e.g., driving a car, doing household chores, preparing small meals, doing laundry, and going to church. (AR at 16-17.) These types of "minimal daily functions are not comparable to typical work activities" (required to perform unskilled, light jobs) due to their sporadic or intermittent character. *Rogers v. Comm'r*, 486 F.3d 234, 248 (6th Cir. 2007).[3] Therefore, there was no "other" substantial basis for the ALJ's RFC finding. The ALJ erred in determining Plaintiff can perform unskilled, light work in the absence of a supporting medical opinion.

---

[3] *See also* 20 C.F.R. § 416.972(c) ("Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity."); Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1 ("Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.").

**A judicial award of benefits is not warranted in this case.**

The remaining question is the appropriate remedy. According to Plaintiff:

> For the above stated reasons, the decision of the Commissioner should be reversed and Plaintiff awarded benefits based on her Title 16 application of October 22, 2015. Or in the alternative, this matter should be remanded to the Commissioner for further findings in conformity with the applicable rules and regulations and based on the evidence of record.

(Docket # 11 at 14.)

When a court finds that the ALJ's decision is not supported by substantial evidence, it may award benefits (as opposed to remand for a new decision) "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Wiser v. Comm'r*, 627 F. App'x 523, 526 (6th Cir. 2015) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Id.*

As noted above, Plaintiff's treating physicians opined limitation that, if accepted, would preclude performance of unskilled, light work, and the ALJ acknowledged that Plaintiff would "grid out" if restricted to sedentary work. (AR at 69.) Nevertheless, all "essential factual issues" have not been resolved. This is because, while the ALJ did not give "good reasons" for giving "little weight, as opposed to controlling weight" (AR at 17) to the opinions of the treating physicians; upon remand, the ALJ may still find that these opinions are entitled to less than controlling or deferential weight. *See Snyder v. Comm'r*, No. CV 14-CV-12814, 2015 WL 5342357, at *6 (E.D. Mich. Sept. 14, 2015) ("All 'essential factual issues' have not been resolved in this case…. The ALJ must weigh Dr. Lenhart's opinions regarding Plaintiff's functional limitations in accordance with the treating physician rule and against the other medical evidence in the record. After such an analysis, the ALJ may still find that Dr. Lenhart's opinion is not entitled to controlling weight."); *Sanderson v. Comm'r*, No. 1:16-CV-220, 2017 WL 2274380, at *6 (W.D. Mich. May 25, 2017) ("This case is being remanded because the ALJ failed to provide good reasons for assigning less than controlling weight to the treating physician opinions, not because there is compelling evidence that

Plaintiff is disabled"); *Richards v. Comm'r*, No. CIV.A. 10-167-GWU, 2011 WL 577384, at *4 (E.D. Ky. Feb. 9, 2011) ("[T]he March, 2008 assessment would not necessarily be entitled to controlling weight and a remand of the action for further consideration would allow this essential factual determination to be made.").

## Order

Therefore, this matter is REMANDED to the Commissioner for a new decision and any further proceedings deemed necessary and appropriate by the Commissioner.

November 25, 2019

Lanny King, Magistrate Judge
United States District Court